Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff and all others similarly situated*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA SNOW, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>NECTAR BRAND LLC,<br><br>*Defendant.* | Case No. 2:22-cv-07912<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Class Action Complaint

# Table of Contents

**I.    Introduction.**.................................................................**3**

**II.   Parties**........................................................................**6**

**III.  Jurisdiction and Venue.**...............................................**6**

**IV.   Facts.**.........................................................................**6**

    *A.    Nectar's fake sales and discounts.*...........................6

    *B.    Nectar's advertisements violate Washington law.*.......14

    *C.    Nectar's advertisements harm consumers.*................15

    *D.    Nectar knows that its advertisements are misleading.*..16

    *E.    Plaintiff was misled by Defendant's misrepresentations.*..17

    *F.    Nectar breached its contract.*...............................17

**V.    Class Action Allegations.**............................................**18**

    *A.    The Nationwide Class and the Washington Subclass.*......18

**VI.   Claims.**......................................................................**20**

*First Cause of Action:  Violation of the Washington Consumer Protection Act: RCW Chapter 19.86*.........................................20

*Second Cause of Action: Breach of Contract*.....................22

*Third Cause of Action: Breach of Express Warranty*............23

*Fourth Cause of Action:  Breach of Implied Warranty*..........23

*Fifth Cause of Action: Quasi-Contract/Unjust Enrichment*.....24

*Sixth Cause of Action: Negligent Misrepresentation*............25

*Seventh Cause of Action: Intentional Misrepresentation*........26

**VII.   Relief.**.....................................................................**27**

## I.     Introduction.

1.     Consumers like discounts.  Buyers are more likely to purchase an item if they know that they are getting a good deal.  Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2.     While there is nothing wrong with a legitimate sale, a fake one—that is, one with made up regular prices, made up discounts, and made-up expirations— is deceptive and illegal.

3.     As the Federal Trade Commission advises in its *Guides Against Deceptive Pricing*, it is deceptive to make up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price 16 C.F.R. §233.1.

4.     So, these sales violate Washington's general prohibition on unfair or deceptive business practices.  *See* Wash. Rev. Code Ann. § 19.86.020.

5.     Defendant Nectar makes, sells, and markets mattresses, bedding, and other sleep-related products (the "Nectar Products" or "Products").  The Products are sold online through Defendant's website, nectarsleep.com.

6.     Nectar's website prominently advertises sales on its websites.  These advertisements include purported regular prices, purported discounts, and a countdown timer that purportedly shows when the sale ends.  For example:

Nectar's sale:



Purported regular prices and associated discounts:



Clock counting down until the sale ends:



7.    Everything about these advertisements is false.  Nectar's products do not retail at the supposed regular prices it lists.  In fact, Nectar has never once sold a single product at its supposed "regular" price.  The supposedly "discounted" prices are the prices that Nectar always sells its products for.  And when the countdown timer ends, the sale doesn't.  Nectar simply changes the name of the sale (for example, from "Labor Day" sale to "After Labor Day" sale) and continues to list its products at the same, supposedly discounted price.

8.    Mrs. Snow bought a Nectar mattress and bedding.  Like Nectar's other customers, when Mrs. Snow bought Nectar's products, Nectar advertised that a purported sale was going on.  Mrs. Snow believed that the Nectar Products that she purchased retailed for the displayed regular price.  She further believed that she was getting a substantial discount from the regular price, and that the sale would end soon.  These reasonable beliefs are what caused her to buy from Nectar when she did.  If the products she purchased weren't on sale, she would not have bought them and would have instead comparison shopped.

9.    But none of that was true.  Nectar's published regular prices were fake; the products Mrs. Snow bought were not actually sold at those prices.  There is also no actual discount from full price, and the sale never ends.  Had Nectar been truthful, Plaintiff and other consumers would not have purchased the products or would have paid less for them.

10.    Plaintiff brings this case for herself and the other consumers who purchased Nectar Products.

## II.   Parties.

11.   Plaintiff Amanda Snow is domiciled in Lynnwood, Washington.

12.   The proposed class includes citizens of Washington state.

13.   Defendant Nectar Brand LLC is a California Limited Liability Company with its principal address at 340 S. Lemon Ave #9599, Walnut, California, 91789.

## III.   Jurisdiction and Venue.

14.   This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant.

15.   The Court has personal jurisdiction over Defendant because its principal place of business is within this District.

16.   Venue is proper because Defendant resides in this district, at its Walnut, California, headquarters.

## IV.   Facts.

### A.   Nectar's fake sales and discounts.

17.   Nectar makes, sells, and markets mattresses, bedding, and other sleep-related products. Nectar sells its products directly to consumers online, through its website, nectarsleep.com.

18.   Nectar's websites create an illusion that customers are receiving a limited-time discount. Nectar does this by advertising fake limited-time sales, fake regular prices, and fake discounts based on the fake regular prices.

Fake limited-time sales:

19.   Nectar's website persistently represents that a sale is on the verge of ending.

Class Action Complaint

20.     For example, on July 19, 2022, Nectar website advertised a sale on its website:



Captured July 19, 2022.

21.     The sale prominently featured a timer, which said that the sale would expire at midnight:



22.    But at midnight, the sale did not end.  Instead, the same sale remained the next day, with an updated timer stating that the sale would expire at midnight the following day.



Captured July 20, 2022.

23.    The same thing happened the next day.  Rather than having the sale expire at midnight, as the website had previously represented, Nectar instead changed the timer to indicate that the sale would now end at midnight three days later.

Class Action Complaint

1
2
3
4
5
6
7
8
9
10



11   Captured July 21, 2022.

12        24.    That same sale has persisted for months or more, and still has not

13   expired:

14
15
16
17
18
19
20
21



22   Captured July 26, 2022.

23
24
25
26
27
28



Captured August 1, 2022.



Captured August 15, 2022



Captured September 1, 2022.



Captured September 19, 2022.



Captured October 27, 2022.

25.    This same deception has gone on throughout the entire applicable statute of limitations period.

26.    Nectar's website persistently misleads consumers into believing that a sale is ending soon, when in fact it is not.

<u>Fake regular prices and fake discounts</u>:

27.    Nectar's website also lists fake regular prices (that is, prices reflecting the list price or value of an item) and fake discounts.

Class Action Complaint

28.    For example, on September 12, 2022, Nectar advertised a sale that included various sleep bundles.  As part of this sale, Nectar offered its Queen sleep bundle, which had a purported regular price of $1,498:



29.    The sale was advertised as ending at midnight that day:



Class Action Complaint

30.     In addition, Nectar represented to consumers who purchased the Queen Bundle during the sale that they would be receiving a $699 discount from the regular price of $1498:



31.     But the truth is, the Queen Bundle is not regularly priced at $1498. Its "Total Value" is never $1498. Instead, the regular price for the Queen Bundle is always at $799, and the customer is receiving no discount from the regular price by buying during the purported sale.

32.     Indeed, two days later—after the sale should have expired—the Queen Bundle was still available for $799 (and still represented to be on sale, when in fact it was not):



33.    By listing fake regular prices and fake discounts, Nectar misleads consumers into believing that they are getting a good deal.

**B.    Nectar's advertisements violate Washington law.**

34.    As the Federal Trade Commission states in its *Guides Against Deceptive Pricing*, "where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the 'bargain' being advertised is a false one." 16 C.F.R. § 233.1.

35.    Advertising such false "bargains" is false, misleading, and unfair. Accordingly, it violates Chapter 19.86 of Washington's Consumer Protection Act. The statute states, for example, that "[u]nfair methods of competition and unfair or

1  deceptive acts or practices in the conduct of any trade or commerce" are unlawful.

2  Wash. Rev. Code Ann. § 19.86.020.

3      36.    So not only are Nectar's business practices generally deceptive and

4  fraudulent and therefore banned—they are also specifically prohibited by statute.

5  **C.    Nectar's advertisements harm consumers.**

6      37.    Based on Nectar's advertisements, reasonable consumers would

7  expect that the listed regular prices are prices that Nectar actually sells its products

8  for.  Reasonable consumers would also expect that, if they purchase during the

9  sale, they will receive a discount from the regular purchase price.

10      38.    In addition, consumers are more likely to buy the product if they

11  believe that the product is on sale and that they are getting a substantial discount.

12      39.    Consumers that are presented with discounts are substantially more

13  likely to make the purchase.  "Nearly two-thirds of consumers surveyed admitted

14  that a promotion or a coupon often closes the deal, if they are wavering or are

15  undecided on making a purchase."[1]  And, "two-thirds of consumers have made a

16  purchase they weren't originally planning to make solely based on finding a

17  coupon or discount," while "80% [of consumers] said they feel encouraged to

18  make a first-time purchase with a brand that is new to them if they found an offer

19  or discount."[2]

20      40.    Similarly, when consumers believe that an offer is expiring soon, the

21  sense of urgency makes them more likely to buy a product.[3]

22      41.    Thus, Nectar's advertisements harm consumers by inducing them to

23  make purchases based on false information.

---

[1] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

[2] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

[3] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

**D.      Nectar knows that its advertisements are misleading.**

42.      Nectar is aware that publishing fake sales, regular prices, and discounts mislead consumers.  They know this because they were previously referred to the Federal Trade Commission for doing the same thing.

43.      In December 2019, the National Advertising Division of the Better Business Bureau (NAD) reported Nectar to the Federal Trade Commission for advertising a fake limited-time sale.

44.      In that case, Nectar had advertised, "LIMITED OFFER: $125 Off + 2 Free Pillows."  The National Advertising Bureau "determined that the claim was misleading to consumers," because there was no evidence that "the Nectar mattresses were ever offered for sale at the 'regular' price prominently displayed on its website or in its retail advertising."  Further, there was "no evidence that Nectar's offer for '2 Free Pillows" had been made available to consumers for a limited amount of time."[4]

45.      Similarly, Nectar is aware that the representations that it makes to consumers about its products must be truthful.  Nectar and its parent company, Resident Home, were investigated by the FTC for falsely claiming that its products are made or assembled in the USA, when in fact they are wholly imported from China.[5]  Resident Home, Nectar's parent company, was ultimately fined for this practice.[6]

46.      Despite this, Nectar has continued its practice of making false representations about limited-time sales, regular prices, and discounts.

---

[4] NAD Refers Nectar Sleep to the FTC (bbbprograms.org)
[5] https://www.ftc.gov/news-events/news/press-releases/2018/03/nectar-brand-llc-agrees-settle-ftc-charges-companys-claims-about-chinese-made-mattresses-being
[6] https://www.ftc.gov/news-events/news/press-releases/2021/10/ftc-orders-made-usa-repeat-offender-pay-funds

**E.  Plaintiff was misled by Defendant's misrepresentations.**

47.  On February 19, 2022, Mrs. Snow bought a Twin-sized Nectar mattress, two standard-sized pillows, a Twin-sized sheet set, a Twin-sized mattress protector, and a 10-year accidental mattress warranty coverage.  She purchased the items from Nectar's website, nectarsleep.com, while living in Lynnwood, Washington.

48.  Mrs. Snow purchased the mattress, bedding, and warranty for $548 plus tax.  The products were prominently advertised as being on sale for a limited time.  Mrs. Snow's invoice represented that she was receiving a substantial discount for the bundle that she ordered.  The invoice represented that the combined regular price of the items was $947 plus tax, and that Mrs. Snow was receiving a total discount of $399 for the mattress, mattress protector, bed sheet set, pillows, and warranty coverage.

49.  Mrs. Snow read and relied on the representations on the website that the products had the published regular price, and that she was receiving a discount as compared to the regular price.  She would not have purchased the product if she knew that the Nectar Products were not on sale, and that she was paying full price.

**F.  Nectar breached its contract.**

50.  When Mrs. Snow purchased and paid for the Nectar Products she bought, she accepted an offer that Nectar made, and thus, a contract was formed. The offer was to provide a mattress and bedding having a market value (i.e., "Total Value") of $947, for a discounted price of $548; and to provide a discount of $399 off the regular price of the mattress, bedding, and warranty Mrs. Snow purchased.

51.  Nectar and Mrs. Snow entered a contract.  The contract was memorialized in Nectar's order confirmation.  The order confirmation lists the market value of the items that Nectar promised to provide, and also specified the dollar amount of the discount off the regular price that Nectar promised to provide Mrs. Snow.

52.     The market value of the mattress and bedding Mrs. Snow would receive, and the amount of the discount she would be provided off the regular price of those items, were specific and material terms of the contract.

53.     Nectar breached its contracts by failing to provide Mrs. Snow with products with a market value equal to the regular price displayed on its website, and by failing to provide the discount promised.

**V.     Class Action Allegations.**

  **A.     The Nationwide Class and the Washington Subclass.**

54.     Plaintiff brings her claims individually and on behalf of the following class and subclass:

- Nationwide Class: all persons who, while in the United States and within the applicable statute of limitations period, purchased one or more Nectar products advertised at a discount on Nectar's website.

- Washington Subclass: all persons who, while in the state of Washington and within the applicable statute of limitations period, purchased one or more Nectar products advertised at a discount on Nectar's website.

55.     The following people are excluded from the class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

***Numerosity & Ascertainability***

56.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are tens or hundreds of thousands of class members.

57.    Class members can be identified through Defendant's sales records and public notice.

***Predominance of Common Questions***

58.    There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) whether Nectar made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated Washington's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express or implied warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

***Typicality & Adequacy***

59.    Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased the Nectar Products advertised at a discount on Nectar's website.  There are no conflicts of interest between Plaintiff and the class.

***Superiority***

60.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

# VI.    Claims.

## First Cause of Action:

### Violation of the Washington Consumer Protection Act: RCW Chapter 19.86 (by Plaintiff and the Washington Subclass)

61.    Plaintiff incorporates each and every factual allegation set forth above.

62.    Plaintiff brings this cause of action on behalf of herself and the Washington Subclass.

63.    Defendant has violated the Washington Consumer Protection Act (CPA), RCW Chapter 19.86.

64.     Section 19.86.020 of the CPA states, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  RCW §19.86.020.

65.    Under the CPA, "Private rights of action may … be maintained for recovery of actual damages, costs, and a reasonable attorney's fee.  A private plaintiff may be eligible for treble damages," and "may obtain injunctive relief, even if the injunction would not directly affect the individual's own rights." Washington Pattern Jury Instruction Civil No. 310.00 (Consumer Protection Act—Introduction) (internal citations omitted); RCW §1986.090.

66.    Defendant engages in the conduct of trade or commerce within the meaning of the CPA.  Defendant does this by selling mattresses, bedding, and other sleep-related products in a manner that directly and indirectly affects people of the state of Washington.

67.    As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to class members, constituting acts of unfair methods of competition and/or unfair or deceptive acts or practices.

68.     Defendant did this by advertising limited-time offers that were not actually limited in time, false regular prices, and false discounts regarding its products.

69.     Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

70.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing Nectar Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

71.     In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Nectar Products.

72.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the class.

73.     Plaintiff and the class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Nectar Products if they had known the truth, and/or (b) they overpaid for the Products because the Nectar Products were sold at a price premium due to the misrepresentation.

74.     Defendant's acts or omissions are injurious to the public interest because these practices were committed in the course of Defendant's business and were committed repeatedly before and after Plaintiff purchased Defendant's products.  They are part of a pattern of unfair and deceptive advertisements.  These actions have injured other persons, and, if continued, have the capacity to injure additional persons.

**Second Cause of Action: Breach of Contract**

**(by Plaintiff and the Nationwide Class)**

75.    Plaintiff incorporates each and every factual allegation set forth above.

76.    Plaintiff and Nationwide Class members entered into contracts with Nectar when they placed orders to purchase products on Nectar's website.  These contracts were memorialized in invoices that were sent to purchasers.

77.    The contracts provided that Plaintiff and class members would pay Nectar for the products ordered.

78.    The contracts further required that Nectar provide Plaintiff and class members with products that have a market value equal to the regular prices displayed in the invoice.  They also required that Nectar provide Plaintiff and class members with the discount listed in the invoice.  These were specific and material terms of the contract.

79.    The specific discounts were a specific and material term of each contract, and were displayed to Plaintiff and class members at the time they placed their orders.  The discounts were further memorialized in the order confirmations that Nectar emailed to customers after they had placed their orders.

80.    Plaintiff and class members paid Nectar for the products they ordered, and satisfied all other conditions of their contracts.

81.    Nectar breached the contracts with Plaintiff and class members by failing to provide products that had a market value equal to the regular price displayed on its website, and by failing to provide the promised discount.  Nectar instead charged Plaintiff and class members the full market price of the products they ordered.  Nectar did not provide the discount that Nectar had promised.

82.    As a direct and proximate result of Nectar's breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

**Third Cause of Action**: Breach of Express Warranty

**(by Plaintiff and the Washington Subclass)**

83. Plaintiff incorporates each and every factual allegation set forth above.

84. Plaintiff brings this count individually and for the Washington Subclass.

85. Defendant, as the designer, manufacturer, marketer, distributor, supplier, and/or seller of the Nectar Products, issued material, written warranties by advertising that the Products had a market value equal to the regular price displayed on Nectar's website. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

86. This warranty was part of the basis of the bargain and Plaintiff and members of the class relied on this warranty.

87. In fact, the Nectar Products did not have the stated market value. Thus, the warranty was breached.

88. Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on October 24, 2022.

89. Plaintiff and the class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Nectar Products if they had known that the warranty was false, or (b) they overpaid for the Products because the Products are sold at a price premium due to the warranty.

**Fourth Cause of Action**:  Breach of Implied Warranty

**(by Plaintiff and the Washington Subclass)**

90. Plaintiff incorporates each and every factual allegation set forth above.

91. Plaintiff brings this count individually and for the Washington Subclass.

Class Action Complaint

92.    As described in greater detail above, Defendant impliedly warranted that the Nectar Products had a market value equal to the regular price displayed on Nectar's website.

93.    This warranty was part of the basis of the bargain and Plaintiff and members of the class relied on this warranty.

94.    In fact, the Nectar Products did not have a market value equal to the regular price displayed.  Thus, the warranty was breached.

95.    Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on October 24, 2022.

96.    Plaintiff and the class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Nectar Products if they had known the truth, or (b) they overpaid for the Products because the Products are sold at a price premium due to the warranty.

**Fifth Cause of Action**: Quasi-Contract/Unjust Enrichment
**(by Plaintiff and the Nationwide Class)**

97.    Plaintiff incorporates each and every factual allegation set forth above.

98.    Plaintiff alleges this claim individually and on behalf of the Nationwide Class.

99.    As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the class to purchase Nectar Products and to pay a price premium for these products.

100.   In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

101.   Plaintiff and the class seek restitution.

**<u>Sixth Cause of Action</u>: Negligent Misrepresentation**

**(by Plaintiff and the Washington Subclass)**

102.    Plaintiff incorporates each and every factual allegation set forth above.

103.    Plaintiff alleges this claim individually and on behalf of the Washington Subclass.

104.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiffs and class members concerning the existence, duration, and/or nature of the discounts and savings advertised on its website.

105.    These representations were false.

106.    When Defendant made these misrepresentations, it knew or should have known that they were false.  Defendant had no reasonable grounds for believing that these representations were true when made.

107.    Defendant intended that Plaintiff and class members rely on these representations and Plaintiff and class members read and reasonably relied on them.

108.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Nectar Products.

109.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

110.    Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Nectar's Products if they had known that the representations were false, and/or (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentation.

**<u>Seventh Cause of Action</u>: Intentional Misrepresentation**

**(by Plaintiff and the Washington Subclass)**

111.   Plaintiff incorporates each and every factual allegation set forth above.

112.   Plaintiff alleges this claim individually and on behalf of the Washignton Subclass.

113.   As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiffs and class members concerning the existence, duration, and/or nature of the discounts and savings advertised on its website.

114.   These representations were false.

115.   When Defendant made these misrepresentations, knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.

116.   Defendant intended that Plaintiff and class members rely on these representations and Plaintiff and class members read and reasonably relied on them.

117.   In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Nectar Products.

118.   Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

119.   Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Nectar's Products if they had known that the representations were false, and/or (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentation.

## VII. Relief.

120.    Plaintiff seeks the following relief for herself and the class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendants' deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

Dated: October 31, 2022

By: _____

Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

## Demand for Jury Trial

Plaintiff and the class demand the right to a jury trial on all claims so triable.

Dated: October 31, 2022

By. _____
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

Class Action Complaint